# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SANDRA D. PRESLEY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-12-261-SPS |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,[1] | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Sandra D. Presley requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born April 9, 1956, and was fifty-four years old at the time of the administrative hearing (Tr. 29). She completed high school and one year of college, and has worked as a school secretary (Tr. 18, 174). The claimant alleges that she has been unable to work since July 14, 2009, due to asthma, arthritis, carpal tunnel, and left knee problems (Tr. 168-169).

### Procedural History

On June 4, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, as well as supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Richard J. Kallsnick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 24, 2010 (Tr. 10-19). The Appeals Council denied review, so the ALJ's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.1967(b), *i. e.*,

she could lift/carry 20 pounds occasionally and 10 pounds frequently, and sit/stand/walk six hours in an eight-hour workday. The ALJ also found that the claimant could operate hand and foot controls and had no postural, manipulative, visual, or communicative limitations, but did require a temperature-controlled clean air environment. He noted that she had mild to moderate pain occasionally severe enough to be noticeable, but could remain attentive and responsive enough to carry out her work satisfactorily. Finally, the ALJ found that the claimant's medication would not preclude her from remaining reasonably alert to perform the required functions in a work setting (Tr. 13). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work as a school secretary, and because there was other work in the regional and national economy that she could perform as well, *i. e.*, data entry person, appointment clerk, and registration clerk (Tr. 25-26).

**Review**

The claimant contends that the ALJ erred: (i) by failing to include manipulative limitations in her RFC; and (ii) by failing to include limitations in the claimant's RFC corresponding to her severe impairments of degenerative arthritis and bilateral carpal tunnel syndrome. Because the ALJ *did* fail to properly account for all of the claimant's severe impairments, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The record reveals that the claimant had the severe impairments of degenerative arthritis, bilateral carpal tunnel syndrome, asthma, hypertension and obesity (Tr. 12). The relevant medical evidence reveals that the claimant underwent carpal tunnel surgery on

her left hand on August 5, 1997, on her right hand on March 14, 2000, and dislocated her left elbow on July 28, 2002, following a fall (Tr. 209, 249, 251). A July 8, 2004 nerve conduction study was normal in comparison to a previous study from 1999, when there had been a prolongation of the right median sensory nerve action potential peak latency (Tr. 244). On March 24, 1996, the claimant also had left knee surgery of partial medial meniscectomy and chondroplasty medial femoral condyle (Tr. 254). A November 2, 2009 X-ray of the AP/Lat Lumbo-Sacral Spine revealed adequate joint spaces, and an AP/Lat Left knee X-ray revealed the presence of metallic screws, as well as degenerative changes with small osteophyte formation anterior-superior tibial plateau (Tr. 267).

On November 2, 2009, Dr. Charles Taylor performed a consultative physical examination of the claimant (Tr. 268-270). As to her extremities, he noted that there was no clubbing or cyanosis, but that mild edema was present and that she ambulated with normal posture and gait and without an assistive device (Tr. 269). His impression was of asthma and COPD, and that her pulmonary function revealed moderate obstruction not improved after bronchial dilator; degenerative arthritis which affects both hands and the left knee, but that she has good range of motion; and obesity (Tr. 270). The following month, a state agency reviewing physician found that the claimant was capable of the full range of light work (Tr. 272-278). A second consultative examiner met with the claimant on July 7, 2010. Dr. James F. Bischoff's physical exam revealed mildly positive axial grind test bilaterally, with the left greater than the right; tingling in the hand with tapping over the median nerve; negative elbow flexion test bilaterally; no intrinsic atrophy of either hand; as well as considerable arthritis of the proximal interphalangeal joints of both

hands, which are somewhat symmetrical (Tr. 280). He further indicated that the claimant was a good candidate for EMG/NCV testing to rule out compressed neuropathy, as well as for rheumatoid screen to determine if she has arthropathy that might benefit from specific anti-inflammatory medications (Tr. 280). Dr. Bischoff stated that the claimant "may participate in regular activities at the present time" (Tr. 280).

The claimant's former employer requested an evaluation of repetitive cumulative trauma through July 14, 2009 (her date of retirement and alleged onset date), which was provided by Richard A. Hastings II, D.O. He reviewed medical records and evaluated her on October 13, 2009 and again on December 29, 2009. He noted that the claimant had nonresolving pain syndromes involving her hands and wrists, which arose out of the repetitive cumulative trauma during her employment (Tr. 285). Following the evaluation, including range-of-motion testing on both hands, Dr. Hastings opined that the claimant sustained an accidental on-the-job injury due to repetitive cumulative trauma through July 14, 2009, and that she had not reached maximum medical improvement and was in need of further evaluation and treatment of her hands and wrists (Tr. 289). He found that she was temporarily totally disabled beginning August 4 through the date of his opinion, due to injuries on her hands and wrists arising out of repetitive cumulative trauma (Tr. 290). In his October 13, 2009 evaluation, Dr. Hastings found that the claimant sustained injuries to the pulmonary system and lungs resulting in occupational asthma with industrial bronchitis and industrial sinobronchial syndrome (Tr. 295).

On February 16, 2010, Dr. William R. Gillock conducted an independent medical evaluation of the claimant's impairments (Tr. 298-305). He found that the claimant had

-6-

non-work-related asthma, with a 10% permanent partial impairment to the whole person, and that she was at maximum medical improvement (Tr. 302).

At the administrative hearing, the claimant testified she took disability retirement from her job due to the pain in her hands from arthritis and swelling (Tr. 30-31). She described her medical history of surgeries and indicated her hands (particularly swelling) were her biggest obstacle to working (Tr. 31-32). She testified that on bad days she could not grip things, that she could never make a closed fist, and that she had three to four bad days a week (Tr. 33). She stated that she could no longer use a knife, had recently been unable to peel potatoes, and struggled to grip a pencil (Tr. 33). She indicated that her right wrist was worse than her left (Tr. 33), and that she had trouble with clothing with buttons, and could only wear tennis shoes if someone could tie them for her (Tr. 40). She testified that she usually took only Aleve for the pain, because other medications would trigger her asthma (Tr. 34). She testified that her asthma exacerbated any respiratory illness she contracted, and that she would wheeze when doing her grocery shopping (Tr. 35). She stated that she used a breathing machine, a daily inhaler, and a rescue inhaler, but that the amount of treatment varied from week to week (Tr. 36). She stated that, due to her left knee problems, she had to avoid steps and uneven surfaces (Tr. 38).

A vocational expert also testified at the claimant's administrative hearing. The VE indicated that, assuming that the claimant's complaints were fully credible, she could not perform any of the jobs identified because they all required frequent use of the hands, which was problematic given her own description as well as the swelling she showed to everyone present at the hearing that day (Tr. 47).

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical evidence. He gave great weight to the opinions of the reviewing state agency physicians as largely consistent with his RFC, but added the limitation of a clean air and temperature-controlled environment to the claimant's RFC (Tr. 16). He found that the claimant was not credible, specifically noting that there were no opinions of record indicating that the claimant was disabled or had greater limitations than the ones he included in her RFC (Tr. 15-17). He stated that the claimant's statements regarding her hand, wrist, and knee impairments were supported by the past surgeries, "which certainly suggests that the symptoms were genuine," but noted that she did not seek treatment between July 2004 and December 2009 (Tr. 17). The ALJ stated that "the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision." (Tr. 17). He also pointed out that none of the claimant's treating physicians had placed functional restrictions on her activities that would preclude work (Tr. 17), and although he summarized the tests performed by Dr. Hastings, he made no mention of Dr. Hastings' finding that the claimant was temporarily totally disabled (Tr. 15).

Despite finding that the claimant's degenerative arthritis, bilateral carpal tunnel syndrome, and obesity were severe impairments, the ALJ failed to include any limitations related to these impairments. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the

ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. In this regard, the ALJ should have explained why the claimant's hand, wrist, and shoulder impairments, as well as her obesity, did not call for corresponding physical limitations to her ability to use her hands and raise her shoulder, as well as why he gave credence to the evidence related to the claimant's asthma and COPD, but not to these pain-related impairments. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). Furthermore, the ALJ should have considered the combined effect of all the claimant's impairments in assessing her RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]; *McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]"). *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx.

879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Gtotendorst's mental impairments were not severe, she gave those impairments no further consideration. This was reversible error."). For example, the ALJ should at least have discussed the impact of the claimant's obesity on her other impairments. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting "obesity is [a] medically determinable impairment [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. R. 02-1p, 2000 WL 628049, at *1, *5-*6, *7; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). *See also Hamby*, 260 Fed. Appx. at 112 (discussing requirements of SSR 02-01p and finding that "the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe impairments."); *DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2000 WL 628049, at *6.

The ALJ also failed to provide any analysis of the medical opinions contained in the record. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). "[T]he notice of the determination or decision must contain an explanation of the weight given to the treating source's medical opinion[s]." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996). Here, the ALJ merely *recited* the medical evidence (without providing any analysis of it under the governing standards for evaluating such evidence) and stated his conclusions without connecting them to the evidence. This was especially important to do here given the progressive nature of the claimant's degenerative arthritis. *See* Soc. Sec. Rul. 83-20, 1983 WL 31249, at *2 ("With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling . . . In such cases, it [is] necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.").

Furthermore, although the ALJ was not bound by any statement that the claimant was temporarily totally disabled, he not only ignored such evidence but actually faulted the claimant for not having any. *Baca v. Department of Health & Human Services*, 5 F.3d 476, 480 (10th Cir. 1993) ("'Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered.'"), *quoting Fowler v.*

*Califano*, 596 F.2d 600, 603 (3d Cir. 1979). *See also Kanelakos v. Astrue*, 249 Fed. Appx. 6, 8 (10th Cir. 2007) ("[T]he ALJ mentioned the VA rating and appropriately stated that the SSA and VA standards differ. But he completely 'fail[ed] to discuss the significance of the VA's disability evaluation.'"), *quoting Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005) ("Although another agency's determination of disability is not binding on the Social Security Administration, 20 C.F.R. § 416.904, it is evidence that the ALJ must consider and explain why he did not find it persuasive."), *citing Baca*, 5 F.3d at 480. At a minimum, the ALJ should have acknowledged Dr. Hastings' opinion that the claimant was totally temporarily disabled and explained why he rejected it.

Accordingly, the decision of the Commissioner must be reversed and the case remanded for further analysis of the claimant's RFC, in particular her severe impairments of degenerative arthritis, bilateral carpal tunnel, and obesity, and whether they had any additional and cumulative effects. On remand, the ALJ should also properly consider Dr. Hastings' finding that she was temporarily totally disabled. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

The Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma